| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS NORFOLK, SS | SUPERIOR COURT |
| | DOCKET NUMBER ___19  1140___ |

| | | |
|---|---|---|
| MARK HAYES, | ) | |
| Plaintiff | ) | |
| v. | ) | |
| IXP CORPORATION, | ) | |
| and MASSACHUSETTS BAY | ) | |
| TRANSPORTATION | ) | |
| AUTHORITY (MBTA) | ) | COMPLAINT AND DEMAND |
| Defendants | ) | FOR JURY TRIAL |

## NATURE OF COMPLAINT

1. As is alleged more fully below, plaintiff Mark Hayes claims that defendants IXP Corporation and Massachusetts Bay Transportation Authority, collectively Defendants, (i) discriminated against and terminated Plaintiff without due process because of his protected speech, race, and national origin; and (ii) failed to pay Plaintiff all wages due upon termination.  IXP Corporation failed to properly and timely notify Plaintiff of and provide him his rights to continued health insurance under the Consolidated Omnibus Reconciliation Act, commonly referred to as COBRA.

## PARTIES AND JURISDICTION

2. Plaintiff Mark Hayes (Plaintiff) is a natural person residing in Norfolk County, Massachusetts.

3. Defendant Massachusetts Bay Transportation Authority (MBTA) is a body politic and corporate.  See G.L. c. 161A, § 2.

4. The MBTA is a political subdivision of the Commonwealth of Massachusetts. See G.L. c. 161A, § 2.

5. The MBTA has a principal office located at the Transportation Building, 10 Park Plaza, Boston, Suffolk County, Massachusetts, 02116.

6. The MBTA has the power to sue and be sued in law and equity. See G.L. c. 161A, §§ 2 and 38.

7. The MBTA is liable for its debts and obligations. See G.L. c. 161A, § 2.

8. The MBTA is expressly excluded from the protection of sovereign or governmental immunity under the Massachusetts Tort Claims Act. See G.L. c. 258, § 1.

9. Defendant IXP Corporation is a private foreign entity incorporated in the State of Delaware.

10. IXP Corporation has a principal place of business at 103 Main Street, Princeton, New Jersey, 08540.

11. IXP Corporation contracts to supply emergency response (9-1-1) dispatch services for the MBTA, specifically the MBTA Transit Police Department.

12. IXP Corporation employees performing services for the MBTA operate out of the MBTA Transit Police Department station at 240 Southampton Street, in Roxbury, Suffolk County, Massachusetts.

13. IXP Corporation employees are agents of the MBTA.

14. IXP Corporation employees are apparent agents of the MBTA.

15. IXP Corporation transacts business in Massachusetts.

16. IXP Corporation contracts to supply services in Massachusetts.

17. IXP Corporation regularly does business in Massachusetts.

18. IXP Corporation regularly solicits business in Massachusetts.

19. IXP Corporation engages in a persistent course of conduct in Massachusetts.

20. IXP Corporation derives substantial revenue from services rendered in Massachusetts.

21. The Massachusetts registered agent of IXP Corporation is Cogency Global Inc. at 44 School Street, Suite 325, Boston, Massachusetts, 02108.

22. The MBTA employs more than six (6) persons.

23. IXP Corporation employs more than six (6) persons.

## FACTS

24. IXP Corporation is contracted by the MBTA to perform 9-1-1 dispatch services.

25. IXP Corporation performs 9-1-1 dispatch services for the MBTA.

26. 9-1-1 dispatch services are traditionally state functions.

27. 9-1-1 dispatch services were performed by the MBTA until they contracted such functions out to IXP Corporation in or around 2017.

28. 9-1-1 dispatch services are functions that primarily benefit the public.

29. The MBTA is a state actor for purposes of the U.S. Constitution.

30. IXP Corporation is a state actor for purposes of the U.S. Constitution.

31. The MBTA supervises employees of IXP Corporation in their performance of 9-1-1 dispatch services for the MBTA.

32. The MBTA maintains control over the 9-1-1 dispatch services performed by employees of IXP Corporation for the MBTA.

33. The MBTA maintains control over the terms and conditions of employment of employees of IXP Corporation performing 9-1-1 dispatch services for the MBTA.

34. 9-1-1 dispatch services are nondelegable responsibilities of the MBTA.

35. Plaintiff was at all relevant times an employee of IXP Corporation.

36. Plaintiff was at all relevant times supervised by IXP Corporation.

37. Plaintiff was at all relevant times supervised by agents of IXP Corporation.

38. Plaintiff was at all relevant times an employee of the MBTA.

39. Plaintiff was at all relevant times supervised by the MBTA.

40. Plaintiff was at all relevant times supervised by agents of the MBTA.

41. Plaintiff performed 9-1-1 dispatch services for IXP Corporation.

42. Plaintiff performed 9-1-1 dispatch services for the MBTA.

43. The MBTA was a joint employer of Plaintiff.

44. The MBTA is jointly and severally liable for actions of IXP Corporation.

45. The signature line of the professional email of Plaintiff, mhayes@ixpcorp.com, read as
    follows:

> Mark P. Hayes
> Dispatcher IXP Corp
> MBTA Police Dept.
> 240 Southampton St.
> Roxbury Ma. 02118

46. Plaintiff worked out of the MBTA Transit Police Department station at 240 Southampton
    Street, in Roxbury, Suffolk County, Massachusetts.

47. Plaintiff has served two tours of duty overseas, one in Iraq and the other in Afghanistan.

48. Plaintiff has also served as a police officer.

49. Plaintiff has risked his life defending the rights of others.

50. Therese Patricia Okoumou is a naturalized U.S. citizen.

51. Therese Patricia Okoumou is from the Democratic Republic of Congo.

52. Therese Patricia Okoumou came to the U.S. as a refugee.

53. Ms. Okoumou is or was at all relevant times part of a group called Rise and Resist NYC.

54. Rise and Resist NYC is a group resisting President Trump and his policies on immigration.

55. On July 4, 2018, Ms. Okoumou protested United States immigration policies.

56. On July 4, 2018, Ms. Okoumou climbed the Statue of Liberty.

57. On July 4, 2018, Ms. Okoumou caused the closure of the Statue of Liberty.

58. On July 4, 2018, Ms. Okoumou risked the lives of the police officers that had to scale the Statue of Liberty to retrieve Ms. Okoumou.

59. The Fourth of July is the birthday of the United States.

60. The Fourth of July is an important day for patriots of the United States.

61. On August 3, 2018, Ms. Okoumou attended a criminal hearing.

62. On August 3, 2018, Ms. Okoumou was greeted by reporters outside the courthouse.

63. On August 3, 2018, Ms. Okoumou chanted before news cameras: "America, you motherfuckers, you drug addicts, you KKK, you fascist U.S.A."

64. Ms. Okoumou's behavior in paragraphs 53-58 and 63 is political.

65. Ms. Okoumou's behavior in paragraphs 53-58 and 63 is offensive.

66. On August 4, 2018, a news segment about Ms. Okoumou's behavior in paragraphs 53-58 and 63 played on the television in the police station where Plaintiff was working.

67. In response to the news segment referenced in paragraph 66, Plaintiff stated: "If she hates America so much, she should go back to Africa."  (From here on: "Plaintiff's Statement.")

68. In response to Plaintiff's Statement in paragraph 67, Latoya Bowman shouted: "That was a racist comment!"  (From here on: "Bowman's Complaint.")

69. Latoya Bowman was at all relevant times a colleague of Plaintiff.

70. Latoya Bowman was at all relevant times an employee of IXP Corporation.

71. Latoya Bowman was at all relevant times an employee of the MBTA.

72. Latoya Bowman was at all relevant times an agent of IXP Corporation.

73. Latoya Bowman was at all relevant times an agent of the MBTA.

74. Latoya Bowman was at all relevant times supervised by the MBTA.

75. Latoya Bowman was at all relevant times supervised by agents of the MBTA.

76. Prior to August 4, 2018, Latoya Bowman had expressed her dislike for Plaintiff to Plaintiff.

77. Prior to August 4, 2018, Latoya Bowman had expressed her dislike for Plaintiff to employees of the MBTA.

78. Prior to August 4, 2018, Latoya Bowman had expressed her dislike for Plaintiff to supervisors of the MBTA.

79. Prior to August 4, 2018, Latoya Bowman had expressed her dislike for Plaintiff to employees of IXP Corporation.

80. Prior to August 4, 2018, Latoya Bowman had expressed her dislike for Plaintiff to supervisors of IXP Corporation.

81. Prior to August 4, 2018, Latoya Bowman and Plaintiff did not have a good working relationship.

82. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that there was no racist or racial intent behind (his) Plaintiff's Statement in paragraph 67.

83. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was not a comment about race but politics.

84. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that although Bowman understood (his) Plaintiff's Statement in paragraph 67 to be racist, Plaintiff did not intend it to be.

85. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was a political statement about how he disagreed with Ms. Okoumou's politics.

86. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was a political statement about how he disagreed with Ms. Okoumou's method of political protest; she is free to peaceably assemble, not break the law, ruin the Fourth of July for visitors to the Statue of Liberty, and risk the lives of police officers.

87. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was a political statement about how Ms. Okoumou, through her political expression, is thankless and disrespectful to the country that welcomed her in as a refugee.

88. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was a political statement about how Ms. Okoumou, through her political expression, is thankless and disrespectful to Plaintiff and all the men and women that serve and have served the United States.

89. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that he is not a racist, that he has served among many persons of color, persons for whom he would give his life.

90. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that (his) Plaintiff's Statement in paragraph 67 was not racist just like it would not have been racist if a white Canadian had climbed the Statue of Liberty on the Fourth of July and Plaintiff had said: "If she hates America so much, she should return to Canada."

91. In response to Bowman's Complaint in paragraph 68, Plaintiff turned to explain that he is simply a patriot.

92. Plaintiff was stopped from explaining himself as he intended in paragraphs 82-91 by Lieutenant David Albanese (Lt. Albanese) of the MBTA Transit Police Department.

93. Lt. Albanese told all parties to end the conversation.

94. Lt. Albanese is an employee of the MBTA.

95. Lt. Albanese is an agent of the MBTA.

96. Lt. Albanese was the senior MBTA Transit Police Department officer on shift.

97. Lt. Albanese supervised Plaintiff.

98. Lt. Albanese supervised Latoya Bowman.

99. Lt. Albanese wrote up a written complaint against Plaintiff for Plaintiff's Statement in paragraph 67.

100.     MBTA Police Superintendent Richard Sullivan informed IXP Corporation of Plaintiff's Statement in paragraph 67.

101.     MBTA Police Superintendent Richard Sullivan is an employee of the MBTA.

102.     MBTA Police Superintendent Richard Sullivan is an agent of the MBTA.

103.     MBTA Police Superintendent Richard Sullivan informed IXP Corporation that Plaintiff was not to be assigned to the MBTA pending an investigation.

104.     MBTA Police Superintendent Richard Sullivan did not tell IXP Corporation that
they would pay for the services of Plaintiff during the investigation.

105.     The only operations of IXP Corporation in Boston are at the MBTA.

106.     On or around August 5, 2018, Plaintiff was informed by Harry Marshall that he
was suspended with pay pending the outcome of an investigation into Plaintiff's
Statement in paragraph 67.

107.     Harry Marshall was at all relevant times an employee of IXP Corporation.

108.     Harry Marshall was at all relevant times an agent of IXP Corporation.

109.     Harry Marshall was at all relevant times the MBTA contract supervisor for IXP
Corporation.

110.     Harry Marshall was at all relevant times the MBTA Project Director for IXP
Corporation.

111.     Harry Marshall was at all relevant times the supervisor of Plaintiff at IXP
Corporation.

112.     Harry Marshall works out of IXP Corporation's principal office in New Jersey.

113.     On or around August 6, 2018, Harry Marshall informed Plaintiff that his
employment was terminated.

114.     Plaintiff was terminated because of Plaintiff's Statement in paragraph 67.

115.     Plaintiff was terminated because Plaintiff's Statement in paragraph 67 violated
MBTA anti-discrimination policy.

116.     Plaintiff was terminated because Plaintiff's Statement in paragraph 67 violated
IXP anti-discrimination policy.

117.     The MBTA influenced Plaintiff's termination.

118.  Agents of the MBTA influenced Plaintiff's termination.

119.  Plaintiff was not provided any opportunity to explain Plaintiff's Statement in paragraph 67.

120.  Plaintiff was not provided any process before his termination.

121.  Upon information and belief, IXP Corporation did not conduct an investigation.

122.  IXP Corporation did not ask Plaintiff to explain Plaintiff's Statement in paragraph 67.

123.  Upon information and belief, IXP Corporation did not interview any witnesses to Plaintiff's Statement in paragraph 67.

124.  Upon information and belief, MBTA did not conduct an investigation.

125.  MBTA did not ask Plaintiff to explain Plaintiff's Statement in paragraph 67.

126.  Upon information and belief, MBTA did not interview any witnesses to Plaintiff's Statement in paragraph 67.

127.  Plaintiff is White.

128.  Latoya Bowman is Black.

129.  Latoya Bowman is African American.

130.  Upon information and belief, Latoya Bowman imputed a racist meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff is White.

131.  Upon information and belief, Harry Marshall imputed a racist meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff is White.

132.  Upon information and belief, Lt. Albanese imputed a racist meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff is White.

133.     Upon information and belief, MBTA Police Superintendent Richard Sullivan imputed a racist meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff is White.

134.     Upon information and belief, Defendants and agents thereof imputed a racist meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff is White.

135.     Upon information and belief, Latoya Bowman would not have imputed a racist meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

136.     Upon information and belief, Harry Marshall would not have imputed a racist meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

137.     Upon information and belief, Lt. Albanese would not have imputed a racist meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

138.     Upon information and belief, MBTA Police Superintendent Richard Sullivan would not have imputed a racist meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

139.     Upon information and belief, Defendants and agents thereof would not have imputed a racist meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

140.     Upon information and belief, Latoya Bowman would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

141.     Upon information and belief, Harry Marshall would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

142.     Upon information and belief, Lt. Albanese would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

143.    Upon information and belief, MBTA Police Superintendent Richard Sullivan would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

144.    Upon information and belief, Defendants and agents thereof would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff was Black.

145.    Upon information and belief, if Plaintiff were Black, he would not have been terminated.

146.    Upon information and belief, Plaintiff was terminated because he is not Black.

147.    Upon information and belief, Plaintiff was terminated because he is White.

148.    Plaintiff's national origin is the United States.

149.    Upon information and belief, Latoya Bowman imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff's national origin is the United States.

150.    Upon information and belief, Harry Marshall imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff's national origin is the United States.

151.    Upon information and belief, Lt. Albanese imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff's national origin is the United States.

152.    Upon information and belief, MBTA Police Superintendent Richard Sullivan imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff's national origin is the United States.

153.     Upon information and belief, Defendants and agents thereof imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 because Plaintiff's national origin is the United States.

154.     Upon information and belief, Latoya Bowman would not have imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

155.     Upon information and belief, Harry Marshall would not have imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

156.     Upon information and belief, Lt. Albanese would not have imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

157.     Upon information and belief, MBTA Police Superintendent Richard Sullivan would not have imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

158.     Upon information and belief, Defendants and agents thereof would not have imputed a racist and/or discriminatory meaning behind Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

159.     Upon information and belief, Latoya Bowman would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

160.     Upon information and belief, Harry Marshalll would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

161.     Upon information and belief, Lt. Albanese would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

162.     Upon information and belief, MBTA Police Superintendent Richard Sullivan would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

163.     Upon information and belief, Defendants and agents thereof would have allowed Plaintiff to explain Plaintiff's Statement in paragraph 67 if Plaintiff's national origin was Africa.

164.     Upon information and belief, if Plaintiff's national origin was Africa, he would not have been terminated.

165.     Upon information and belief, Plaintiff was terminated because his national origin is not Africa.

166.     Upon information and belief, Plaintiff was terminated because his national origin is the United States.

167.     The conduct complained of herein was performed in accordance with policy, practice and/or custom of the MBTA.

168.     Upon information and belief, final authority to establish MBTA Police Department policy, practice and/or custom with respect to Plaintiff's termination was delegated to the employee at MBTA Police Department responsible for influencing termination, termination or ratifying termination of Plaintiff's employment.

169.     Alternatively, upon information and belief, final authority to establish MBTA Police Department policy, practice and/or custom with respect to Plaintiff's termination was delegated to IXP Corporation.

170.      Final authority to establish MBTA Police Department policy, practice and/or custom with respect to Plaintiff's termination was a nondelegable duty.

171.      The conduct complained of herein was performed in accordance with policy, practice and/or custom of IXP Corporation.

172.      Upon information and belief, final authority to establish IXP Corporation policy, practice and/or custom with respect to the conduct complained of herein was delegated to the employee at IXP Corporation responsible for terminating and/or ratifying termination of Plaintiff's employment.

173.      The MBTA does not believe that Massachusetts antidiscrimination laws apply to protect white persons from discrimination.

174.      The MBTA does not believe that a person can be racist towards another person of the same race.

175.      Upon information and belief, the anti-discrimination policy of the MBTA has a disparate impact on white persons.

176.      Upon information and belief, no Black persons have been terminated by the MBTA because of violation of the MBTA's anti-discrimination policy.

177.      Upon information and belief, no Black persons have been disciplined by the MBTA because of violation of the MBTA's anti-discrimination policy.

178.      Upon information and belief, no Black persons have been investigated by the MBTA because of violation of the MBTA's anti-discrimination policy.

179.      Upon information and belief, no persons of color have been terminated by the MBTA because of violation of the MBTA's anti-discrimination policy.

180.     Upon information and belief, no persons of color have been disciplined by the MBTA because of violation of the MBTA's anti-discrimination policy.

181.     Upon information and belief, no persons of color have been investigated by the MBTA because of violation of the MBTA's anti-discrimination policy.

182.     Upon information and belief, the anti-discrimination policy of the MBTA has a disparate impact on persons whose national origin is the United States.

183.     Upon information and belief, no persons whose national origin is other than the United States have been terminated by the MBTA because of violation of the MBTA's anti-discrimination policy.

184.     Upon information and belief, no persons whose national origin is other than the United States have been disciplined by the MBTA because of violation of the MBTA's anti-discrimination policy.

185.     Upon information and belief, no persons whose national origin is other than the United States have been investigated by the MBTA because of violation of the MBTA's anti-discrimination policy.

186.     Upon information and belief, the anti-discrimination policy of IXP Corporation has a disparate impact on white persons.

187.     Upon information and belief, no Black persons have been terminated by IXP Corporation because of violation of IXP Corporation's anti-discrimination policy.

188.     Upon information and belief, no Black persons have been disciplined by IXP Corporation because of violation of IXP Corporation's anti-discrimination policy.

189.     Upon information and belief, no Black persons have been investigated by IXP Corporation because of violation of IXP Corporation's anti-discrimination policy.

190.     Upon information and belief, no persons of color have been terminated by IXP
Corporation because of violation of IXP Corporation's anti-discrimination policy.

191.     Upon information and belief, no persons of color have been disciplined by IXP
Corporation because of violation of IXP Corporation's anti-discrimination policy.

192.     Upon information and belief, no persons of color have been investigated by IXP
Corporation because of violation of IXP Corporation's anti-discrimination policy.

193.     Upon information and belief, the anti-discrimination policy of IXP Corporation
has a disparate impact on persons whose national origin is the United States.

194.     Upon information and belief, no persons whose national origin is other than the
United States have been terminated by IXP Corporation because of violation of IXP
Corporation's anti-discrimination policy.

195.     Upon information and belief, no persons whose national origin is other than the
United States have been disciplined by IXP Corporation because of violation of IXP
Corporation's anti-discrimination policy.

196.     Upon information and belief, no persons whose national origin is other than the
United States have been investigated by IXP Corporation because of violation of IXP
Corporation's anti-discrimination policy.

197.     Plaintiff was not paid in full on the day of his discharge.

198.     Plaintiff was a beneficiary of IXP Corporation's group health plan by virtue of his
employment.

199.     Upon information and belief, IXP Corporation is the plan sponsor of IXP
Corporation's group health plan.

200.     Upon information and belief, IXP Corporation failed to properly and timely notify the administrator of IXP Corporation's group health plan of his termination.

201.     IXP Corporation failed to properly and timely notify Plaintiff of his right to elect continuation of health insurance coverage following termination.

202.     IXP Corporation failed to cause proper and timely notification to Plaintiff of his right to elect continuation of health insurance coverage following termination.

203.     Upon information and belief, the administrator of IXP Corporation's group health plan failed to properly and timely notify Plaintiff of his right to elect continuation of health insurance coverage following termination.

204.     IXP Corporation failed to provide Plaintiff his right to elect continuation of health insurance coverage within the election period following termination.

205.     Plaintiff has suffered tremendously both financially and emotionally as a result of Defendants' conduct complained of herein.

COUNT ONE AS TO ALL DEFENDANTS

FREE SPEECH

FEDERAL CLAIM

206.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this Complaint as if fully set forth herein.

207.     Defendants' conduct set forth in this count violates the First Amendment of the U.S. Constitution in that it violates Plaintiff's free speech rights protected thereunder. This claim is brought pursuant to 42 U.S.C. § 1983.

COUNT TWO AS TO ALL DEFENDANTS

FREE SPEECH

STATE CLAIM

208.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

209.     Defendants' conduct set forth in this count violates the First Amendment to the

United States Constitution, Article LXXVII of the Articles of Amendment of the

Massachusetts Constitution, Article XVI of the Massachusetts Declaration of Rights, and

G.L. c. 12, § 11H in that it violates Plaintiff's free speech rights protected thereunder.

This claim is brought pursuant to G.L. c. 12, § 11I.

### COUNT THREE AS TO ALL DEFENDANTS

### DUE PROCESS

### FEDERAL CLAIM

210.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

211.     Defendants' conduct set forth in this count violates the Fifth and Fourteenth

Amendments of the U.S. Constitution in that it violates Plaintiff's due process rights

protected thereunder.  This claim is brought pursuant to 42 U.S.C. § 1983.

### COUNT FOUR AS TO ALL DEFENDANTS

### DUE PROCESS

### STATE CLAIM

212.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

213.     Defendants' conduct set forth in this count violates the Fifth and Fourteenth

Amendments of the U.S. Constitution, Articles I, X, and XII of the Massachusetts

Declaration of Rights, and Article CVI of the Articles of Amendment of the

Massachusetts Constitution in that it violates Plaintiff's due process rights protected

thereunder.  This claim is brought pursuant to G.L. c. 12, § 11*I*.

**COUNT FIVE AS TO ALL DEFENDANTS**

**RACE-BASED EQUAL PROTECTION**

**FEDERAL CLAIM**

214.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

215.     Defendants' conduct set forth in this count violates the Fourteenth Amendment of

the U.S. Constitution in that it violates Plaintiff's right to equal treatment regardless of

race.  This claim is brought pursuant to 42 U.S.C. § 1983.

**COUNT SIX AS TO ALL DEFENDANTS**

**RACE-BASED EQUAL PROTECTION**

**STATE CLAIM**

216.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

217.     Defendants' conduct set forth in this count violates the Fourteenth Amendment of

the U.S. Constitution, Article I of the Massachusetts Declaration of Rights, and Article

CVI of the Articles of Amendment of the Massachusetts Constitution in that it violates

Plaintiff's right to equal treatment regardless of race.  This claim is brought pursuant to

G.L. c. 12, § 11*I*.

**COUNT SEVEN AS TO ALL DEFENDANTS**

**NATIONAL ORIGIN-BASED EQUAL PROTECTION**

FEDERAL CLAIM

218.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

219.     Defendants' conduct set forth in this count violates the Fourteenth Amendment of

the U.S. Constitution in that it violates Plaintiff's right to equal treatment regardless of

national origin.  This claim is brought pursuant to 42 U.S.C. § 1983.

COUNT EIGHT AS TO ALL DEFENDANTS

NATIONAL ORIGIN-BASED EQUAL PROTECTION

STATE CLAIM

220.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

221.     Defendants' conduct set forth in this count violates the Fourteenth Amendment of

the U.S. Constitution, Article I of the Massachusetts Declaration of Rights, Article CVI

of the Articles of Amendment of the Massachusetts Constitution, and G.L. c. 12, § 11H in

that it violates Plaintiff's right to equal treatment regardless of national origin.  This

claim is brought pursuant to G.L. c. 12, § 11I.

COUNT NINE AS TO ALL DEFENDANTS

RACE-BASED EMPLOYMENT DISCRIMINATION

STATE LAW

222.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

223.     Plaintiff has timely exhausted his administrative remedies, *i.e.*, he filed a related

complaint at the Massachusetts Commission Against Discrimination (MCAD) on January

14, 2019.

224.     Defendants' conduct set forth in this count violates G.L. c. 151B, § 4 in that

Defendants discriminated against Plaintiff on the basis of race.  This claim is brought

pursuant to G.L. c. 151B, § 9.

COUNT TEN AS TO ALL DEFENDANTS

NATIONAL ORIGIN-BASED EMPLOYMENT DISCRIMINATION

STATE LAW

225.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

226.     Plaintiff has timely exhausted his administrative remedies, *i.e.*, he filed a related

complaint at the Massachusetts Commission Against Discrimination (MCAD) on January

14, 2019.

227.     Defendants' conduct set forth in this count violates G.L. c. 151B, § 4 in that

Defendants discriminated against Plaintiff on the basis of national origin.    This claim is

brought pursuant to G.L. c. 151B, § 9.

COUNT ELEVEN AS TO ALL DEFENDANTS

AIDING AND ABETTING EMPLOYMENT DISCRIMINATION

STATE LAW

228.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

229.     Plaintiff has timely exhausted his administrative remedies, *i.e.*, he filed a related

complaint at the Massachusetts Commission Against Discrimination (MCAD) on January

14, 2019.

230.     Defendants' conduct set forth in this count violates G.L. c. 151B, § 4 (5).   This

claim is brought pursuant to G.L. c. 151B, § 9.

COUNT TWELVE AS TO ALL DEFENDANTS

RACE-BASED EMPLOYMENT DISCRIMINATION

FEDERAL LAW

231.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

232.     Plaintiff has timely exhausted his administrative remedies, *i.e.*, he filed a related

complaint at the Massachusetts Commission Against Discrimination (MCAD) on January

14, 2019.

233.     Defendants' conduct set forth in this count violates Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq., in that Defendants discriminated against Plaintiff

on the basis of race.  This claim is brought pursuant to 42 U.S.C. § 2000e-5.

COUNT THIRTEEN AS TO ALL DEFENDANTS

NATIONAL ORIGIN-BASED EMPLOYMENT DISCRIMINATION

FEDERAL LAW

234.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

235.     Plaintiff has timely exhausted his administrative remedies, *i.e.*, he filed a related

complaint at the Massachusetts Commission Against Discrimination (MCAD) on January

14, 2019.

236.     Defendants' conduct set forth in this count violates Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e et seq., in that Defendants discriminated against Plaintiff

on the basis of national origin.  This claim is brought pursuant to 42 U.S.C. § 2000e-5.

## COUNT FOURTEEN AS TO IXP CORPORATION

## WRONGFUL TERMINATION BECAUSE OF PROTECTED SPEECH

237.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

238.     The conduct of IXP Corporation set forth in this count constitutes wrongful

termination in violation of the public policy as defined by the First Amendment to the

United States Constitution, Article LXXVII of the Articles of Amendment of the

Massachusetts Constitution, Article XVI of the Massachusetts Declaration of Rights, and

G.L. c. 12, § 11*I* in that it violates Plaintiff's free speech rights protected thereunder.

## COUNT FIFTEEN AS TO ALL DEFENDANTS

## UNTIMELY PAYMENT OF WAGES

239.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

240.     Plaintiff filed related complaints with and received related private right of action

letters from the Attorney General authorizing this action under M.G.L. c. 149 § 150.

241.     Defendants' conduct set forth in this count violates G.L. c. 149, § 148.  This claim

is brought pursuant to G.L. c. 149, § 150.

## COUNT SIXTEEN AS TO IXP CORPORATION

### ERISA

242.     Plaintiff incorporates herein by reference paragraphs 1 through 205 of this

Complaint as if fully set forth herein.

243.     IXP Corporation's conduct set forth in this count constitutes violation of 29

U.S.C. §§ 1161 and 1166 and related regulations.  This claim is brought pursuant to 29

U.S.C. § 1132.

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

244.     ENTER JUDGMENT in Plaintiff's favor for back pay, front pay, emotional

damages, compensatory damages, punitive damages, liquidated damages, statutory

damages and penalties, attorneys' fees and costs, and all permissible legal interest; and,

245.     AWARD such other and further relief as the Court deems just and meet.

### JURY CLAIM

Plaintiff demands trial by jury on all issues and claims triable by jury.

Date: Sept 6, 2019

Lucas Newbill, Attorney for Plaintiff

Law Offices of Lucas Newbill
P.O. Box 1741
Brookline, Massachusetts 02446
Tel. 617-918-7567
Fax. 617-910-2514
lucas@lucasnewbill.com
BBO No. 697176

25