**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

MARK HAYES,

      Plaintiff,

v.

                                      Docket No. 19-cv-12042-WGY

IXP CORPORATION and MASSACHUSETTS
BAY TRANSPORTATION AUTHORITY (MBTA),

      Defendants.

---

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT IXP CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Defendant, IXP Corporation ("IXP") is entitled to judgment as a matter of law. IXP is not a state actor. There was no public interest in Plaintiff, Mark Hayes' ("Hayes") statement at all, an admitted fact. Hayes unquestionably fails the *Pickering* balancing test, as IXP's interests overwhelm the non-existent interest admitted to by Hayes. Hayes has admitted that the phrase "go back to Africa" is racist. Hayes' auxiliary claims are similarly subject to judgment as a matter of law.

**FACTUAL BACKGROUND**

IXP is a private company that provides call-taking and dispatch services for the MBTA Police Department. *See* Statement of Undisputed Material Facts ("SOF") at ¶ 1, filed herewith. IXP was awarded the contract to perform these services for the MBTA. SOF at ¶ 2. Plaintiff was an at-will employee of IXP. Id. at ¶ 3. IXP call-takers and dispatchers work in the communications center of the MBTA Police Department. Id. at ¶ 4. Hayes worked primarily as a dispatcher. Id. at ¶ 5. Hayes was terminated on August 6, 2018 following his offensive and racist outburst made on August 4th while working in the call center. SOF at ¶¶ 7, 47. The

1

incident was brought to IXP's attention, the facts examined and IXP decided that the offensive

and disruptive conduct warranted immediate termination.  Id. at ¶¶ 30-44.[1]

## PROCEDURAL HISTORY

This Motion follows the dismissal of several of Plaintiff's claims upon this Court's Order

on IXP's Motion for Judgment on the Pleadings and defendant Massachusetts Bay

Transportation Authority's (the "MBTA") Motion to Dismiss.[2]  Accordingly, the surviving

counts against IXP in the Amended Complaint are limited to: Count I, federal free speech; Count

II, state free speech; Count XII, wrongful termination because of protected speech; Count XIII,

state wage act; and Count XIV, ERISA.

## ARGUMENT

IXP is entitled to summary judgment as there are no genuine disputes as to any material

facts and IXP is entitled to judgment as a matter of law.[3]  Fed. R. Civ. P. 56(a).

---

[1] Further details relative to the operations, culture and policies of IXP, the contractual relationship between IXP and the MBTA, the call center work area where the incident took place and the specifics of the incident, investigation and termination are all set forth in the Statement of Undisputed Material Facts with accompanying exhibits.

[2] Hayes' case was originally brought before the Massachusetts Commission Against Discrimination, including under the Wage Act where there was a clear lack of jurisdiction.  The case was removed to Superior Court without a finding of probable cause against either IXP or the MBTA.  The case was subsequently removed to this Court.

[3] The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."  Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico, 394 F.3d 40, 42 (1st Cir. 2005) (internal quotations marks and citation omitted).  Once the moving party asserts the absence of genuine issues of material fact with supporting affidavits, admissions, or other evidence, the non-movant must show that a factual dispute exists, but cannot rely merely on improbable inferences, conclusory allegations, or rank speculation.  Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003); Fontánez-Núñez v. Janssen Ortho LLC, 447 F.3d 50, 54-55 (1st Cir. 2006).  In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor."  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (further internal quotation marks omitted)).

## I.  IXP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FEDERAL AND STATE FREE SPEECH CLAIMS (COUNTS I, II, AND XII).

Plaintiff's free speech claims fail because Plaintiff cannot meet his burden on the prima facie elements nor establish a dispute of material fact as to them.  Plaintiff cannot establish: (1) that IXP, a private business, is a state actor for purposes of its employment termination decision; (2) that the *Pickering* balancing test allows for a judgment in the Plaintiff's favor when his interest was simply to "vent" personal frustration through a racist comment in the dispatch area, while working and performing important public safety functions; and (3) that the state civil rights claim can survive when Plaintiff has admitted there were no threats, intimidation, or coercion by IXP against him.

### A.  Judgment Must Enter for IXP because the Plaintiff's Non-Existent Interest in His Racist "Go Back to Africa" Comment is Significantly and Unquestionably Outweighed.

Hayes cannot prevail on the *Pickering* balancing test because Hayes' "own interests and the public's interest in the information" Hayes sought to impart were admittedly non-existent, whereas IXP has a significant, legitimate interest in "preventing unnecessary disruptions and inefficiencies in carrying out" its contractual duties to the MBTA.  *See* McGunigle v. Quincy, 132 F. Supp. 3d 155, 171 (D. Mass. 2015) (finding on summary judgment that employer's business and operational interests outweighed employee's interest in making a racist joke), *aff'd* 835 F.3d 192 (1st Cir. 2016).

#### i.  *Hayes had no interest in his speech.*

Hayes admits that there was no interest in his comment, his motive was to merely vent. He was expressing frustration and yelling at the TV as if he was watching a football game.  SOF, at ¶¶ 8-11 (Hayes testifying: "I was speaking for myself and I made a comment to the TV"). These motives provide no interest in his comment and are properly weighed against Hayes.

Pereira v. Comm'r of Soc. Servs., 432 Mass. 251, 262 (2000) (finding no *Pickering* value in admittedly racist comment where employee herself admitted having no great interest in making the comment). In *Pereira*, the Supreme Judicial Court also recognized that the employee's "off-the-cuff remark" at the very least exhibited "outstandingly poor judgment," noting that poor judgment was inconsistent with the employee's work. Id. at 259, 263; *see* SOF, at ¶ 20 (Hayes admits that his role as an IXP dispatcher requires significant judgment, likening it to triage in an emergency room).[4] As in *Pereira*, there is no interest even worth balancing against. Pereira, 432 Mass. at 262; SOF, at ¶¶ 8-11.

      *ii.*      *Hayes' comment had absolutely no value to the public whatsoever.*

In *McGunigle*, the value of speech (about enforcement of dog ordinances in his neighborhood, which had some public interest overlap) "was not particularly high." McGunigle, 132 F. Supp. 3d at 171 (granting summary judgment to employer). In this case, there is no public interest at all – Hayes admits he was "speaking actually, like, you know when you watch a football game and you're yelling at the TV…" in order to "vent a little bit" because he was "upset" after taking comments from a woman on TV personally. SOF, at ¶¶ 8-11; Pereira, 432 Mass. at 262 (mentioning that Pereira's motive was not to engage in debate, raise awareness, or press a position).

Hayes' claims are easily distinguishable from cases where speech had value to the public. *See* Guilloty Perez v. Pierluisi, 339 F.3d 43, 55 (1st Cir. 2003) (involving a whistleblower exposing corruption or malfeasance). Hayes' comment has no value to the public, and thus Hayes' comment cannot survive the *Pickering* balancing as there are no grounds to tilt the scale in his favor. *Cf.* id., at 53. Additionally, Hayes admits his comment, which he provided without

---

[4] The SJC also found that the employee's motivation in reacting to a distasteful comment was insufficient interest to favor the employee in the *Pickering* test. Id. at 266.

context, "is commonly considered a racist comment." SOF, at ¶ 21. The comment is therefore entitled to even less weight. *See* Curran v. Cousins, 509 F.3d 36, 49 (1st Cir. 2007) (employer granted summary judgment where employee's speech about a public official was entitled to less weight in *Pickering* balancing on the grounds that the speech was vulgar, insulting, and in a defiant manner because it used analogies to Hitler and the Nazis); SOF, at ¶¶ 21-22. In *Curran*, the terminated employee had served as a campaign manager for the elected sheriff's opponent and the speech argued that the sheriff was unfairly disciplining his political rivals. Curran, 509 F.3d at 42. In *Curran*, where the court found public interest value in the employee's online posts, the employee's references to Hitler and the Nazis diminished that value, resulting in summary judgment for the employer. Unlike in *Curran*, here there was no public value interest in anything Hayes said, nor did Hayes even have an interest in what he said – Hayes merely yelled a racist comment at the TV in order to vent his own personal frustration. Id.; SOF, at ¶¶ 8-11. Hayes' comment is entitled to no weight, and IXP was wholly within its rights to protect others from Hayes' inappropriate and disruptive conduct. Waters v. Churchill, 511 U.S. 661, 672 (1994) ("a government employer may bar its employees from using [ ] offensive utterance[s] to . . . the people with whom they work"); Curran, 509 F.3d 49; Pereira, 432 Mass. at 262. IXP acted properly, in protection of its significant interests, which unquestionably outweigh Hayes' admittedly minimal interest. Id.

     iii.     *IXP's interests completely overwhelm Hayes' non-existent interest.*

     Hayes's constitutional claim is frivolous.[5] Hayes' non-existent interest renders IXP's balancing burden to be minimal. Connick v. Myers, 461 U.S. 138, 150 (1983); Pereira, 432 Mass. at 262.

---

[5] In its Answer, IXP has defended that the "claims should be dismissed with fees awarded to IXP Corporation as Plaintiff's claims are insubstantial, frivolous and not advanced in good faith in violation of M.G.L. c. 231, § 6F."

Nevertheless, *even if* Hayes had an actual interest in his comment and was meaning to convey a statement of value – facts that are not supported by the summary judgment record – IXP's significant interest in avoiding actual disruption, potential disruption in the future, being able to perform its job efficiently and effectively in accordance with contractual obligations, and to foster a harmonious work environment consistent with its culture would still clearly overwhelm Hayes in the balancing test. Connick, 461 U.S. at 150 (*Pickering* balance requires full consideration of the employer's interest in the effective and efficient fulfillment of its responsibilities); Curran v. Cousins, 509 F.3d at 49 (no actual adverse effect required as employer is under no obligation to allow events to unfold in order to let disruption manifest); Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (government discretion is broader when it acts as employer and speech has mere potential to affect operations); *see also* Estock v. Westfield, 806 F. Supp. 2d 294, 308 (D. Mass. 2011) (employer's interest in preserving harmonious relations among employees outweighed employee's interest where employee "felt attacked" and was unwilling to back down from his improper comments).

Additionally, IXP's interests weigh heavily against Hayes due to the time, place, and manner of Hayes's conduct: Hayes was still on duty, inside the dispatch center which Hayes admits "should be a quiet area" because "it's a professional environment" and he was expected to keep his conversations professional at all times. Connick, 461 U.S. at 153 (noting that speech will likely be more disruptive if it occurs during work hours, at the office, or requires the speaker or others to leave work stations); SOF, at ¶ 25 (including photograph of the enclosed dispatch area with quiet area signage and the television that Hayes was watching while working).

Although IXP is not required to show actual disruption, such disruption is uncontested in the summary judgment record.[6] Hayes' coworker, Latoya Boman, heard the comment and responded to Hayes: "that was a racist comment." SOF, at ¶ 13. Another fellow coworker, Samuel Landais, also heard the statement and responded that he too thought it was racist. SOF, at ¶ 14. Just as in *Pereira*, the impact of Hayes' racist comment "was felt" and IXP "had every reason to conclude that it would interfere with the performance" of the dispatch center. Pereira, 432 Mass. at 263 (ruling in employer's favor due to disruption caused by employee's racist joke). IXP has no obligation to let Hayes' conduct, including his admitted effort to argue with coworkers about his comment, unfold to potentially create further disruption, especially where IXP's interest in avoiding disruption is heightened due to services being provided to the MBTA Transit Police. Curran, 509 F.3d at 49-50 (recognizing *heightened* interest involving police and public safety); SOF, at ¶ 27 (IXP has significant responsibilities, the disruption of which could result in a threat to public safety). Commenting on the seriousness of his job, Hayes admits "[l]ives could be at stake." SOF, at ¶ 28 (acknowledging the significance of the required strong relationship between dispatcher [Hayes] and call-taker [Boman]).[7]

B. Judgment Must Enter for IXP because IXP Is Not a State Actor.

Assuming arguendo that a private company is performing duties that constitute state action, the *employment decisions* made by the private company do not get transformed into state action. *See* Eastes v. ACS Human Servs., LLC, 822 F. Supp. 2d 843, 848 (N.D. Ind. 2011) (rejecting finding of state action to call center company's decision to terminate employee); *see*

---

[6] Hayes' subjective intent (as demonstrated by his continued efforts to argue that his statement was justified) is not relevant for purposes of analyzing likely disruption. Curran, 509 F.3d at 50, n.11; SOF, at ¶ 36.

[7] Additionally, IXP's interests are provided in its written policies, which Hayes admits he agreed to, read, and understood. SOF, at ¶ 59. The record is clear however, that Hayes violated these policies further supporting IXP's unilateral decision to terminate his employment. SOF, at ¶¶ 6-18.

*also* Jarvis v. Vill. Gun Shop, 53 F. Supp. 3d 426, 432 (D. Mass. 2014) (applying the public function, state compulsion, and nexus tests for state action). The issue under each test is whether IXP acted under color of state law in terminating Plaintiff's employment, *not* whether providing dispatch services for the MBTA was state action. Eastes, 822 F. Supp. 2d at 848 (public function test analysis focused to the challenged conduct); Mead v. Indep. Ass'n, 684 F.3d 226, 231–32 (1st Cir. 2012) (state compulsion test analysis tailored to the challenged conduct at issue in the Complaint); Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19-20 (1st Cir. 1999) (nexus test analysis limited to the challenged conduct).

      *i.*      *IXP is not a state actor when it makes employment decisions under the public function test.*

The same conclusion reached in *Eastes* is what is required in this case. As explained in *Eastes*:

> ACS was not a state actor for purposes of Section 1983 when it was making its decision to terminate Eastes' employment. The State of Indiana contracted with ACS to operate a call center tasked with answering inquiries relating to FSSA benefits. **To the extent that this arrangement could be construed to have caused ACS to undertake a traditionally public function,** ***that function is the handling of FSSA benefits inquiries,*** <u>**not the general operation of a call center which would include the hiring and firing of its operators**</u>. In other words, "the specific conduct of which the plaintiff complains," American Mfrs. Mut. Ins. Co., 526 U.S. at 51, 119 S.Ct. 977, is her termination. Like the decisions to terminate the plaintiffs in *George* and *Cornish*, Eastes' termination was not done by a state actor.

Eastes, 822 F. Supp. 2d at 848 (emphasis supplied). Similar to *Eastes*, the only public function that could be alleged here is the actual act of providing the dispatch services, not the operation of the call center, which just as in *Eastes* includes the employment of the dispatchers and the hiring and firing of its own operators. Id.; *see also* Cornish v. Corr. Servs. Corp., 402 F.3d 545, 550 (5th Cir. 2005) (no state action in termination even when employer provides juvenile correctional services); George v. Pac.-CSC Work Furlough, 91 F.3d 1227, 1230 (9th Cir. 1996) (no state action with respect to termination even where state "was enmeshed in certain of [employer's]

activities, and could have regulated its employment decisions"). Unlike in *George*, where there was still no state action found, IXP's contract with the MBTA does not allow the MBTA to terminate an IXP employee. George, 91 F.3d at 1230; SOF, at ¶ 52. IXP's decision to terminate Hayes, made independently on the basis of IXP's own policies after IXP performed its own due diligence, cannot be deemed state action under the public function test. [8] Id.; SOF, at ¶¶ 30-44.

ii.     *IXP is not a state actor under the state compulsion test because there was no coercion.*

The summary judgment record is clear that there was no coercion whatsoever by the MBTA nor was there any significant encouragement, either overt or covert, sufficient to deem IXP's independent decision to terminate Hayes as state action. *See* Mead v. Indep. Ass'n, 684 F.3d 226, 231–32 (1st Cir. 2012) (reciting legal standard for state compulsion test). In *Mead*, the Court found that a private employer's decision to terminate was not compelled by the state, noting that the employer acted, at least in part, for its own reasons. Mead, 684 F.3d at 231–32 (finding compulsion test not met even where government entity "directed" the private employer to replace Mead). In *Mead*, the private employer, when terminating the employee, went so far as to directly cite the government's written direction as the **basis for the termination**. Id. Despite written direction from the government entity and an admission from the private employer that it was motivated to terminate the employee due to the government's input, the Court found that this was insufficient to find state action under the state compulsion test because (a) the state actor did not *order* termination and (b) the employee *could* have been transferred to one of the employer's

---

[8] Regardless, even if the Court were to consider IXP's dispatch services, Hayes would not be able to survive the exclusivity component of the public function test, which requires that the function utilize powers traditionally exclusively reserved to the State, such as: "the administration of elections, the operation of a company town, eminent domain, peremptory challenges in jury selection, and, in at least limited circumstances, the operation of a municipal park." Perkins v. Londonderry Basketball Club, 196 F.3d 13, 19 (1st Cir. 1999). "When a plaintiff ventures outside such narrow confines, she has an uphill climb." Id.

other locations.  Id.  The far lesser facts here compel the same result, where it is undisputed that

IXP was not ordered by the MBTA to terminate Hayes, IXP terminated Hayes for its own

reasons following its own review of the facts, written materials, and conversations with

witnesses and communications with Hayes himself.  Id.  Similarly, just as in *Mead*, IXP could

have kept Hayes as an employee apart from the MBTA contract if it wanted to do so.  Id.; SOF,

at ¶ 48.  Thus, in this case, even if there was a direct instruction from the MBTA that Hayes

could not work at the MBTA location, that would still be insufficient as a matter of law to render

IXP's decision and termination state action.  Mead, 684 F.3d at 231–32.

       iii.      *IXP is not the alter ego of the MBTA and not a state actor under the nexus/joint*
                *action test*.

IXP is a contractor of the MBTA through a competitive bid process and a negotiated

contract.  SOF, at ¶ 53.  It does not hold a monopoly of call center services for the

Commonwealth of Massachusetts or in IXP's place of domicile, New Jersey.  SOF, at ¶ 54;

Jarvis, 53 F. Supp. 3d at 432-33 (D. Mass. 2014) (reciting the Supreme Court's rejection of state

action finding even when a monopoly existed for a private utility company).  IXP controls and

runs its own business subject to its own exclusive control.  SOF, at ¶ 55; *see also* Jarvis, 53 F.

Supp. 3d at 433 (noting private company's power to set its own fee schedule and business

practices as evidence precluding state action finding under nexus text).  IXP does not hold a

sufficiently close nexus to the MBTA to be a state actor at all, much less for an employment

decision it made of its employee based upon its own policies, judgment and findings.  SOF, at

¶¶ 56; 30-44; Jarvis, 53 F. Supp. 3d at 432-34 (rejecting the finding of state action under nexus

test as applied to the challenged conduct).

C.	Judgment Must Enter for IXP on Count II because Hayes Admits there Were No Threats, Intimidation, or Coercion.

MCRA is the "state-law analogue to 42 U.S.C. § 1983 that provides a statutory civil cause of action against those who 'interfere' with the exercise or enjoyment of rights secured by federal or state law." Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011). MCRA applies only where interference with the exercise of rights is done or attempted "by threats, intimidation or coercion." M.G.L. c. 12, § 11H.

Hayes admits that he never felt threatened by anyone at IXP, stating "I was never threatened." SOF, at ¶ 49. Hayes admits that no one at IXP ever intimidated him. SOF, at ¶ 50. Hayes admits that no one at IXP ever coerced him into anything. SOF, at ¶ 51.

 "[T]he MCRA contemplates a two-part sequence: [liability may be found where] (1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that [she] has the constitutional right to do." Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018) (internal citations omitted). Hayes, admittedly an at-will employee, had no right to continued employment. Ayala-Rodriguez v. Rullan, 511 F.3d 232, 238 (1st Cir. 2007) (at-will employee's due process claim fails because "[a]n ordinary 'at will' employment contract creates no protectable expectation of continued employment"). Count II of the Amended Complaint must be dismissed because the summary judgment record clearly shows Hayes cannot satisfy either component required for liability under the MCRA.

## II.	PLAINTIFF CAN ESTABLISH LIABILITY UNDER THE WAGE ACT (COUNT XIII) BECAUSE OF A MINOR DELAY IN PAYMENT, BUT DAMAGES ARE LIMITED TO A NOMINAL AMOUNT OF INTEREST.

The summary judgment record is clear that although Hayes was paid all of his accrued wages, those payments were made through the normal payroll system and therefore were not made on the date of Hayes' termination. SOF, at ¶ 57. This Circuit has held that a delayed

payment is not "lost wages" or "other benefits" under the Wage Act. McGrath vs. Somerville,
D. Mass., No. CV 17-10979-FDS, *23 (Sept. 30, 2019) (granting summary judgment limiting
Wage Act claim for delayed payments to the interest accrued between the time the payment
became due and the time it was ultimately paid); M.G.L. c. 149, § 150. The delay does fall
under the "damages incurred" portion of the Wage Act, meaning that Hayes is entitled to $7.07
only,[9] representing interest on the delay in payment.[10] Id.; SOF, at ¶ 57. No trial on this claim is
required.

### III. IXP IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ERISA CLAIM (COUNT XIV).

There is no material dispute that IXP complied with its sole obligation under the
Consolidated Omnibus Budget Reconciliation Act ("COBRA"), which was to notify the third-
party administrator of its COBRA plan that Hayes was terminated within 30 days of the
termination. 29 U.S.C. § 1166(a)(2) ("the employer of an employee under a plan must notify the
administrator of a qualifying event . . . within 30 days"); SOF, at ¶ 58 (IXP Human Resources
Manager confirming notice was sent to third party provider, with IXP records confirming notices
were sent). COBRA bifurcates the duty to notify employees of their COBRA rights after a
qualifying event occurs, thus after IXP notified Medcom (the third-party administrator) that
Hayes was terminated, IXP met the first COBRA duty and only duty that could provide Hayes
standing to sue IXP. Boddicker v. Esurance, Inc., 758 F. Supp. 2d 898, 907 (D.S.D. 2010) (if an
employer uses an outside plan administrator, the notification process is bifurcated and

---

[9] IXP's records show that Hayes received two payments following termination: $916.75 paid 8/17/2018 (11 days after termination) and $456.00 paid 8/31/2018 (25 days after termination). Assuming a 12% interest rate, the interest on each payment, respectively is [$916.75 * .12 * .03014 (11/365) = ] $3.32 and [$456 * .12 * .068493 (25/365) = ] $3.75. In total, these "damages incurred" amount to $7.07 (less than the $7,000 jurisdictional threshold for small claims in Massachusetts). McGrath, at *23; M.G.L. c. 149, § 150.
[10] Hayes' Initial Disclosure acknowledges that his damages are merely interest from delay. SOF, at ¶ 57. However, Hayes calculated only $3.60 in interest. Id.

employer's notice to plan administrator is sole obligation), *order vacated in part on reconsideration*, 770 F. Supp. 2d 1016 (D.S.D. 2011).[11]

WHEREFORE, the Defendant, IXP Corporation, respectfully request that the Plaintiff's Amended Complaint be dismissed with prejudice and it be awarded costs, legal fees, all remedies available under M.G.L. c. 231, § 6F, and such other relief as deemed equitable and just by the Court.

### REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)

As oral argument may assist the court, IXP Corporation wishes to be heard and requests oral argument on this Motion.

Respectfully submitted,
Defendant,
IXP Corporation,
By its Attorneys,


   */s/ Joshua M. Loveall*
Peter A. Brown, BBO # 654805
Joshua M. Loveall, BBO # 692161
D'Ambrosio Brown LLP
185 Devonshire Street, 10th Floor
Boston, MA 02110
Tel.:    (617) 720-5657
Fax:    (617) 723-4697
pbrown@dambrosiobrown.com
jloveall@dambrosiobrown.com

DATED:  March 23, 2020

---

[11] The second COBRA duty belongs to the plan administrator.  29 U.S.C. §§ 1161(a), 1163, 1166(a)(4).  The notice was sufficient because it was sent to Hayes' last-known address, which remains his current address.  SOF, at ¶ 58 (referring to affidavit with letters to Hayes).  Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 45 (1st Cir. 2007) (holding that a COBRA notice sent via first class mail to employee's last known address is sufficient).

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a true copy of the foregoing document upon each other attorney of record by the ECF system.

_/s/ Joshua M. Loveall_
Joshua M. Loveall

DATED:  March 23, 2020